IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GEORGE JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 06 C 3654 |
| | ) | |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

George Jackson is a carpenter who has been working for the City of Chicago since 1987. He was denied two promotions for which he applied in 2004 and has sued the City for race discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f), and age discrimination under the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 626(c). The City has moved for summary judgment. For the following reasons, the Court grants the City's motion.

### Facts

Because the City has moved for summary judgment, the Court views the facts in the light most favorable to Jackson and draws reasonable inferences in his favor. *See DeValk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 329 (7th Cir. 1987).[1]

---

[1] The City has objected to many of the assertions in Jackson's Local Rule 56.1(b)(3)(C) statement of additional facts and his Local Rule 56.1(b)(3)(B) response to the City's statements of fact, on the grounds that they do not include proper citations to the record, are argumentative, or assert legal conclusions. Factual assertions and denials in Local Rule 56.1 statements must be supported by specific citations to the record. *See* N.D. Ill. LR 56.1(b)(3)(B & C); *Malec v.*
(continued...)

Jackson, a fifty-six year-old African-American man, began his employment with the City in 1987 as a carpenter in the Public Works Department. Since August 2003, he has been a foreman of carpenters in the Department of Transportation. In 2004, the City posted a bid announcement for two positions for general foreman of general trades, one in the Department of Transportation and the other in the Department of General Services. The general foreman of general trades coordinates the activities of all the trade unions to complete a project.

In March 2004, Jackson applied for the position in the Department of Transportation, as did Mike Blake, the individual who eventually received the promotion. At the time the city posted the job opening, Jackson had thirty years of experience as a journeyman carpenter. Tom Powers, Darryl Rouse, and James Joyce were on the panel that interviewed candidates. The interviewers asked, among other things, whether the candidates had experience in estimating the materials and manpower needed to complete a project for the City. Blake had gained experience estimating while working on other jobs for the City. Jackson told the interviewers that he did not have experience estimating for the City. Though it apparently did not come up at the interview, Jackson had estimated jobs while working as a carpenter supervisor for the Chicago Housing Authority from 1985 through 1987.

The job selection process also required candidates to complete a written work sample, which tested the applicants written communication skills. Written communication skills are important for the position of general foreman of general trades. The work sample consisted of

---

[1](...continued)
*Sanford*, 191 F.R.D. 581, 583-85 (N.D. Ill. 2000). The Court agrees that many of Jackson's assertions are improper, as are many of his denials of the City's facts, because they fail to cite supporting evidence. The Court has not considered those assertions or denials that are unsupported by record cites or contain improper argument or legal conclusions.

two parts: a narrative answer describing how the candidate would replace a deck, and questions (for which there were objectively correct answers) regarding the candidate's ability to read and interpret drawings. Powers scored the work sample questions regarding the reading and interpretation of drawings, and all three interviewers discussed the narrative answers. Blake received a perfect score on his work sample. Jackson made several errors on the written test.

The interviewers assigned numerical scores to the candidates based on several hiring criteria. The criteria were quality and relevance of previous job experience, quality of oral communication skills, quality and relevance of supervisory experience, quality of written communication skills, and previous satisfactory performance in positions involving similar duties for the City. The interviewers assigned each candidate a rating of between one and five on each of these points, with one indicating poor performance and five indicating excellent performance. Blake received a score of five in three categories and a four in one category. One category, previous experience in similar positions for the City, did not apply. Blake's total weighted score was 4.75. Jackson received a score of two in three categories, a score of three in one category, and, as with Blake, the category regarding previous experience did not apply. Jackson's total weighted score was 2.25.

At the time Jackson and Blake interviewed for the position, Blake was over forty years old. Prior to his employment with the City, Blake worked at Hartz Construction from 1987 to 1992. He began as a laborer/apprentice but became a journeyman carpenter around 1989. At Hartz Construction, Blake received training in, among other things, rough framing for houses including building walls, installing roofs and stairs, and framing kitchens and bathrooms. While at Hartz, Blake joined the carpenters' union, which sponsored him to work as an apprentice

through Hartz. Blake's work as a laborer/apprentice with Hartz Construction qualified as an approved apprenticeship with the carpenter's union. While Blake worked at Hartz Construction, he learned to read blueprints and gained additional carpentry experience by doing work on the side, such as framing and finishing decks and garages.

Blake received the promotion to general foreman of general trades in the Department of Transportation; Jackson did not.

In March 2004, Jackson applied for the position of general foreman of general trades in the Department of General Services. Kevin O'Gorman and other candidates also applied for the position. Dave Donovan, Bill Alicea, and Tom Beck interviewed the candidates. As part of the interview process, candidates were required to complete a written work sample. The work sample included specific questions relating to the candidate's carpentry skills and specific questions relating to personnel matters that a general foreman of general trades would be expected to handle. All the candidates submitted the work sample, except for Jackson, who refused.

In his response to the City's statement of facts, Jackson denies that candidates were asked to complete a work sample. However, he cites no evidence to support his denial. Instead, he states that the City "has produced no evidence that a work sample was given as part of the interview process . . . ." Pl. Resp. to Def. LR 56.1 Stat. ¶¶ 70-72. But this is incorrect. The City submitted and cited to the affidavit of Dave Donovan, who states that a work sample was given to all candidates and that all candidates completed it except for Jackson, who refused. Def. LR 56.1 Stat. ¶¶ 70-72. Jackson's denials of these assertions do not include a citation to evidence in the record as required by Local Rule 56.1(b)(3)(B). Thus, the City's facts are deemed admitted.

N.D. Ill. LR 56.1(b)(3)(C); *Smith v. Lanz*, 321 F.3d 680, 683 (7th Cir. 2003). *See also, Martino v. Kraft Foods, Inc.*, No. 04 C 2870, 2005 WL 1651195, at *12 (N.D. Ill. July 5, 2005).

O'Gorman received the highest combined score on the work sample and interview among all the candidates, including Jackson. O'Gorman is forty-nine years old. Prior to his employment with the City, he attended Washburne Trade School for four years, studying carpentry. During his training at Washburne, O'Gorman learned about roofs, stairs, building layout, blueprint reading, algebra, concrete, metal stud framing, acoustical ceilings, and drywall. He also received additional experience by doing carpentry work for Levi Company and others. At the end of his training at Washburne, he received a journeyman carpenter's certificate. After completing his training, O'Gorman worked as a carpenter for several companies and had the opportunity to act as a foreman. As a foreman, O'Gorman's duties included reading blueprints, supervising employees, supervising and scheduling work for the trades, coordinating with the trades, and meeting completion deadlines. He also estimated construction jobs prior to his employment with the City. In August 2001, O'Gorman began his employment with the City as a foreman of carpenters in the Department of General Services. He was promoted to general foreman of general trades in the Department of General Services, the position for which Jackson also applied, in May 2004.

Jackson contends that the City prevented him from gaining experience needed to obtain the promotions by allowing non-African-American employees to "act up" as foremen in a discriminatory fashion. The term "acting up" refers to allowing an employee to serve temporarily in a higher position. Employees who act up receive experience, particularly supervisory experience, that they otherwise may not receive. It is undisputed that experience

5

received while acting up is considered in later promotion decisions.

On August 19, 2004, Jackson filed a complaint with the EEOC alleging race and age discrimination. On April 11, 2006, the EEOC issued Jackson a notice of right to sue. He filed this lawsuit on July 7, 2006.

**Discussion**

When a district court rules on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [his] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Entry of summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, admissions, and affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).

**A.     Race discrimination – Count 1**

To prove his race discrimination claims, Jackson can proceed under either the direct or indirect method of proof. The direct method of proof permits a plaintiff to show discrimination by offering one of two types of evidence. *Rogers v. City of Chicago*, 320 F.3d 748, 754 (7th Cir. 2003). The first is direct evidence, which allows a reasonable juror to conclude, without resorting to inference, that an employer terminated the plaintiff for an illegal reason. *See Velez v. City of Chicago*, 442 F.3d 1043, 1049 (7th Cir. 2006). This type of evidence "is essentially an 'outright admission' that a challenged action was undertaken for one of the forbidden reasons covered in Title VII." *Cardoso v. Robert Bosch Corp.*, 427 F.3d 429, 432 (7th Cir. 2005). The second type is circumstantial evidence, which "allows a jury to infer intentional discrimination by the decisionmaker." *Rogers*, 320 F.3d at 754.

Jackson does not argue his race discrimination claim under the direct method. Rather, he proceeds under the indirect method of proof articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). To prove a discrimination claim by the indirect method, Jackson has the initial burden of establishing a *prima facie* case of discrimination. If Jackson can establish a *prima facie* case of unlawful discrimination, the burden shifts to the City to articulate a legitimate, nondiscriminatory reason for the adverse employment actions. *Id.* If the City is able to do so, the burden shifts back to Jackson to prove that the stated reason for the adverse actions was pretextual. *Id.* at 804.

To establish a *prima facie* case of race discrimination for failure to promote, Jackson must establish that he is a member of a protected class; he is qualified for the position; he was rejected for the position; and the position was granted to a person outside the protected class who was similarly or less qualified than Jackson himself. *Jordan v. City of Gary, Indiana*, 396 F.3d 825, 833 (7th Cir. 2005). (Of course, for summary judgment purposes, Jackson need only submit evidence from which a jury reasonably could find that he has established each of these points.) The City does not dispute that Jackson is a member of a protected class and that he did not receive the promotions. It disputes, however, that he was qualified for the position and that the position was given to a similarly or less qualified person outside Jackson's protected class.

Jackson's race discrimination claim is largely predicated on his argument that the City chooses employees to act up in a discriminatory manner. Acting up allows employees to receive training and experience, especially supervisory experience, that they otherwise might not get in their current positions. If the City discriminated against Jackson on the basis of race by not allowing him to act up due to his race, that discrimination would affect the hiring process by

7

unfairly putting him at a disadvantage with regard to a significant portion of the hiring criteria. It would therefore also affect whether Jackson can make out a *prima facie* case of discrimination, because prior experience is related to whether an applicant is qualified for the promotion, one of the factors a plaintiff must establish to make out a *prima facie* case.

The City argues that the Court cannot consider Jackson's allegations that the City chooses employees to act up in a discriminatory manner because he did not include those allegations in his EEOC charge. But Jackson is not making a claim regarding the City's acting up policies distinct from his failure to promote claim. He does not, for example, seek damages for pay he would have received had he been chosen to act up. Rather, Jackson's allegations regarding the City's acting up policies are offered to support his contention that the promotion process is biased against African-Americans because the City does not allow them to gain the same experience as white candidates. It is not a separate claim that Jackson would have had to assert in his EEOC charge.

Jackson has not, however, pointed to any admissible evidence that the City did not allow him to act up because he is African-American. His brief is entirely silent on that point, aside from one conclusory sentence that "decision makers for the City of Chicago routinely select white individuals to act up into positions for which they do not even meet the minimum requirements and in do [sic] so doing, they pass over blacks who are more qualified." Pl. Resp. Brief at 3. Nonetheless, the Court has reviewed Jackson's Local Rule 56.1(b)(3)(C) statement to determine whether he has presented evidence that the City discriminated against him in making its acting up decisions.

Jackson's statements of fact regarding the alleged discrimination in the acting up process

8

are almost entirely conclusory and argumentative and cite to hearsay and other inadmissible evidence. *See, e.g.,* Pl. LR 56.1 Stat. ¶¶ 33, 34, 35, 36, 41, 46, 47, 73, 74 & 76. The Court will not consider "statements of fact" that are not properly supported. *Bordelon v. Chicago School Reform Bd. of Trustees,* 233 F.3d 524, 529 (7th Cir. 2000) (a "district court is entitled to limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' statements."). The Court also notes, however, that there is evidence that Jackson *has* acted up during his tenure with the City. Pl. LR 56.1 Stat. ¶ 53. In sum, Jackson's assertions that he was not offered the chance to act up due to racial discrimination are unsupported and therefore do not assist him in establishing a *prima facie* case of discrimination.

Because it is dispositive, the Court next will address whether Jackson has provided evidence from which a jury reasonably could find that the two individuals that the City promoted to general foreman of general trades are similarly or less qualified than Jackson. Mike Blake plainly had substantial carpentry experience that, at the very least, equaled Jackson's experience. In addition, Blake had experience estimating for the City, while Jackson had no such experience. The ability to estimate jobs is one of the duties of the general foreman of general trades. Moreover, there is no dispute that Blake performed better than Jackson on the written work sample. Blake received a perfect score, while Jackson made several errors. The written work sample counted for twenty-five percent of the total score assigned each candidate. Moreover, the evaluators rated Blake higher in the three other categories, which include quality and relevance of previous job experience, quality of oral communication skills, and quality and relevance of supervisory experience. Blake received a score of five in two of these categories and a four in one category. Jackson received a score of two in three categories and a score of three in one

9

category. A score of five indicates that the candidate performed "far above requirements," while a score of two indicates that the candidate performed "slightly below requirements." Def. LR 56.1(a)(3) Stat., Exs. Q & R. Blake received a combined score of 4.75 and Jackson received a combined score of 2.25. In sum, Jackson has not provided evidence from which a jury reasonably could find that Blake was similarly or less qualified than Jackson to receive the promotion to general foreman of general trades in the Department of Transportation.

Nor has Jackson provided evidence from which a jury reasonably could find that Kevin O'Gorman was similarly or less qualified than Jackson for the general foreman of trades position in the Department of General Services. O'Gorman is also an experienced carpenter. Like Jackson, he attended the Washburne Trade School. O'Gorman also had experience as a foreman and had estimated jobs prior to his employment by the City. He also had supervisory experience that Jackson lacked. Most importantly for present purposes, however, O'Gorman received the highest score among the candidates on the written test and oral interview. Jackson, by contrast, refused to take the written test. Because the written test was a part of the City's selection process for the position, Jackson's refusal to take the test means that he cannot establish that he was qualified for the promotion. In sum, no reasonable jury could find that Jackson has established a *prima facie* case of race discrimination.

For these reasons, the City is entitled to summary judgment on Count 1, Jackson's Title VII race discrimination claim.

**B.     Age discrimination – Count 2**

In his response to the City's motion for summary judgment, Jackson has not addressed the City's arguments regarding why it is entitled to summary judgment on his ADEA claim.

10

The Court could grant the City's motion on that basis alone. *See Davis v. Bierman*, No. 01 C 6658, 2004 WL 161523, at *13 (N.D. Ill. Jan. 21, 2004) (uncontested claims are deemed forfeited). Nonetheless, the Court will address the issue on the merits.

In considering ADEA claims on summary judgment, courts apply the same standards applicable to race discrimination claims. *See, e.g., Luks v. Baxter Healthcare Corp.*, 467 F.3d 1049, 1052 (7th Cir. 2006). Jackson has not identified any evidence that would allow him to proceed under the direct method of proof. The Court therefore analyzes his ADEA claim using the indirect method of proof.

To establish a *prima facie* case of age discrimination, Jackson must show that he was in the protected age group of forty or older, he was qualified for the promotion, he was not promoted, and younger employees were treated more favorably. *Hartley v. Wisconsin Bell, Inc.*, 124 F.3d 887, 890 (7th Cir. 1997). The City concedes that Jackson is a member of the protected class and that he did not receive the promotion. For the reasons articulated in the Court's analysis of Jackson's race discrimination claim, however, Jackson has not provided evidence from which a jury reasonably could find that he has established that Blake and O'Gorman were treated more favorably than he was. As discussed earlier, the evidence shows that Blake and O'Gorman performed better during the interview and on the written test. The City is entitled to summary judgment on Count 2, Jackson's ADEA claim.

## Conclusion

For the reasons stated above, the Court grants defendant's motion for summary judgment

[docket no. 46]. The Clerk is directed to enter judgment in favor of the defendant.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: October 15, 2007